Case No. 23-3247

In the
UNITED STATES COURT of APPEALS
for the SIXTH CIRCUIT
_____

KEITH JONES, on behalf of himself and all others
similarly situated,
Plaintiff-Appellee,

v.

PRODUCERS SERVICES CORPORATION
Defendant-Appellant.

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus

**APPELLANT'S PRICIPAL BRIEF**

Nicholas Bobb, Esq.
Brendan Feheley, Esq.
Danielle Crane, Esq.
Kegler, Brown, Hill & Ritter
65 E. State Street, Suite 1800
Columbus, Ohio 43215
Telephone: (614) 462-5400

*Counsel for Defendant-Appellant*

Oral Argument Requested

## CORPORATE DISCLOSURE STATEMENT

Pursuant to the Federal Rules of Appellate Procedure and Sixth Circuit Rule 26.1, Appellant certifies that Producers Services Corporation is not a subsidiary or affiliate of a publicly owned corporation, and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome. A Disclosure of Corporate Affiliation and Financial Interest form was previously filed with this Court on April 10, 2023. (Disclosure of Corp. Affiliations, R. 7).

# **TABLE OF CONTENTS**

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS.......................................................... ii

TABLE OF AUTHORITIES ..........................................................iv

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF ISSUES ..........................................................2

STATEMENT OF THE CASE..........................................................3

    **I.**    **Factual Background and Producer's *Belo***  ..........................................................3

    **II.**    **Procedural History.**..........................................................6

SUMMARY OF THE ARGUMENTS ..........................................................10

ARGUMENTS..........................................................11

    **I.**    **Standard of Review: *De Novo***..........................................................11

    **II.**    **Producers paid its equipment operators under a valid *Belo* plan.**..........................................................13

        A. *The equipment operators' job duties inherently necessitated irregular working hours.*..........................................................14

        B. *The payment of discretionary bonuses did not invalidate Producers'* Belo *plan.*..........................................................17

    **III.**    **At a minimum, genuine issues of material fact existed relative to whether Producers controlled the irregularity of its workers' schedules.**..........................................................20

CONCLUSION ......................................................................................24

CERTIFICATE OF COMPLIANCE ...................................................26

CERTIFICATE OF SERVICE ...........................................................27

ADDENDUM ...................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Federal Case:**                                                                    **Page**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)............................ 11, 12

*Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) .......................... 12

*Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373-74 (6th Cir. 2009) . 11, 12, 23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325,
    106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)......................................................... 12

*Donovan v. Welex*, 550 F. Supp. 855 (S.D. Tex. 1982) ..................................... 20, 21

*La Quinta Corp. v. Heartland Props. LLC*,
    603 F.3d 327, 335 (6th Cir. 2010) .................................................................. 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 587 (1986) ............................................................... 11, 12, 23

*Schweninger v. Advanced Vision Tech., Inc.*,
    273 F. Supp. 3d 946, 950 (N.D. Ill. 2017) ...................................................... 6

*Walling v. A. H. Belo Corp.*, 316 U.S. 624, 635 (1942) ........................................... 4

**Statutes:**

29 U.S.C. § 207 .................................................................................. 6, 7, 13, 14, 17

**Rules and Regulations:**

29 CFR § 778.108 ............................................................................................. 17

29 CFR § 778.109 ............................................................................................. 17

29 CFR § 778.110 ............................................................................................. 17

29 CFR § 778.111 ................................................................................. 17

29 CFR § 778.405 ................................................................................. 14

29 CFR § 778.408 ......................................................................... 17, 18, 19

Fed.R.Civ.P ........................................................................................ 11

## STATEMENT OF JURISDICTION

This appeal is properly before this Court pursuant to Fed. R. App. P. 3. The substantive ruling from which this appeal is taken is the Opinion and Order of the United States District Court for the Southern District of Ohio, Eastern Division, filed November 14, 2019 (Opinion and Order, R. 67). That decision held Producers' *Belo* plan invalid and found Producers liable for unpaid overtime under the Fair Labor Standards Act. However, that Order also found flaws in Plaintiffs-Appellees' alleged damages and held the calculation and amount of damages in abeyance for further briefing and trial. Subsequent to that decision, the parties entered a Consent Judgment. (Consent Judgment, R. 133). It awarded Plaintiffs-Appellees damages, fully and finally resolving the case. Defendant timely filed its Notice of Appeal on March 23, 2023, in accordance with Fed. R. App. P. 4. (Notice of Appeal, R. 151.)

## <u>STATEMENT OF ISSUES</u>

1.    Did Producers pay its employees in accordance with a valid *Belo* contract?

2.    Was there a genuine issue of material fact regarding whether the irregularity of equipment operators' work schedules was inherent in the nature of the work?

## STATEMENT OF THE CASE

This is a matter of first impression within this Circuit. At the heart of this case is the plan under which Defendant-Appellee Producers Services Corporation ("Producers") paid certain equipment operators. Producers maintains that the plan is a valid *Belo* plan. *Belo* plans are a nuanced and rarely litigated exception to the standard overtime requirements of the FLSA. On cross motions for summary judgment, the District Court determined that Producers' plan did not qualify under *Belo* because it failed to meet the irregular-hours criteria. Specifically, the District Court held that the equipment operators' job duties did not inherently necessitate irregular hours of work. The District Court granted partial summary judgment to Plaintiffs-Appellees as to Producers' liability, from which this appeal is taken.

## I.   **Factual Background and Producers' *Belo* Plan**

Producers is an oil and gas company involved in drilling and pressure pumping, in Ohio and four other states. (Declaration of Frank Leeper, R. 62, Page ID # 992, ¶4.) Plaintiffs-Appellees are current and former oilfield technicians for Producers. (Complaint, R. 1, Page ID # 1–2, ¶ 2.)

The industry is competitive, and there is competition for skilled, experienced, and reliable equipment operators. (Leeper Decl., R. 62, Page ID # 993, ¶11.) Recognizing the volatility in the industry, Producers switched from a traditional hourly compensation plan to a *Belo* plan several years ago precisely

because it wanted to ensure regular, predictable pay for its employees in an industry that can fluctuate wildly. (Id., ¶¶ 13–15; Deposition of Thomas Parks, R. 60, Page ID # 814, 24:12 – 17.) It found that by offering its employees regular, predictable pay during economic downturns, it was able to retain good employees.

Generally, under a *Belo* plan (named after the U.S. Supreme Court case that recognized its legitimacy), an employer in an industry "where the work hours fluctuate from week to week and from day to day" may pay its employees a consistent weekly amount, so long as that amount incorporates proper hourly rates and overtime rates, and otherwise comports with federal law. *Walling v. A. H. Belo Corp.*, 316 U.S. 624, 635 (1942). A fixed wage in an unpredictable industry gives employees "the security of a regular weekly income" so that they can operate on a stable budget. *Id.*

Under Producers' *Belo* plan, the company creates a weekly and biweekly pay amount for equipment operators, up to 60 hours of work per week. (Parks Depo., R. 60, Page ID # 814, 24:5-11.) First, the company determines the total pay the worker would be entitled to for working 40 hours per week, by multiplying the standard hourly rate for its workers by 40 hours. (Id.) Then the company figures the overtime that worker would be entitled to for 20 additional hours of work per week (hours 41-60), by multiplying time-and-a-half the regular hourly rate by 20. (Id.) The company then adds the two numbers together to get the regular weekly

4

pay the employee receives for any work less than 60 hours. (Id.) If the employee works more than 60 hours during a week, Producers pays the overtime rate, one-and-a-half times the standard rate, for all hours over 60. (Id.)

In short, a Producers' equipment operator would get a regular paycheck for a guaranteed amount whether he worked 1 hour per week, 45 hours per week, or 60 hours per week. (Leeper Decl., R. 62, Page ID # 994, ¶ 17.) When there was little or no work, Producers paid equipment operators their base salary amount (equivalent to 60 hours per week) even though the employees worked fewer hours. (Id. at ¶ 18.) When there was more work, Producers paid equipment operators their base salary amount plus overtime if they worked more than 60 hours in a week.

There is no dispute that the equipment operators' schedules were irregular. According to one equipment operator, Casey Foster, there were weeks where he worked more than 40 hours; and weeks where he worked fewer than 40 hours. (Deposition of Casey Foster, R. 58, Page ID # 724, 26:14–27:3; Page ID # 729, 48:5–11.) The dispositive issue, then, is the cause of that irregularity.

Importantly, according to named Plaintiff-Appellee Keith Jones, industry demand dictated how much work was available to Producers, and therefore available to Producers' equipment operators. (Deposition of Keith Jones, R. 61, Page ID # 592, 50:8–51:9.)

## II.     Procedural History

Plaintiffs-Appellees filed their complaint alleging misclassification of employees as exempt and claiming standard wage and hour violations under both Federal and Ohio State law. After being notified of the *Belo* plan structure, Plaintiffs-Appellees shifted their argument, alleging that said plan was invalid.

*Belo* plans are governed by 29 U.S.C. 207(f), which codified the holding of the *Belo* case. When work necessitates irregular hours and the employer pays the employee pursuant to a plan that meets the requirements of 207(f), then the employer has not violated the overtime requirements outlined in Section 207(a). To qualify for the 207(f) exception, an employer's plan must satisfy four requirements:

1.    the employee must be employed pursuant to a bona fide individual contract;

2.    the employee's duties must necessitate irregular work hours;

3.    the contract must specify a regular rate of pay and compensation of not less than one-and-a-half times that rate for hours in excess of a maximum workweek (40 hours); and

4.    the contract must contain a weekly pay guarantee, based on the specified rates, for not more than sixty hours of work.

29 U.S.C. § 207(f); *see also Schweninger v. Advanced Vision Tech., Inc.*, 273 F. Supp. 3d 946, 950 (N.D. Ill. 2017). Plaintiffs-Appellees alleged that Producers' *Belo* plan did not satisfy the second and third requirements of 207(f), irregular

hours necessitated by the work and overtime pay of one-and-a-half times the regular rate for hours worked above 40.

Once discovery was concluded, the parties filed cross motions for summary judgment on the validity of Producers' *Belo* plan. Producers argued that its *Belo* plan met all requirements under the 207(f) test. Specifically relevant to Plaintiffs-Appellees' arguments and the District Court's rulings on those motions, Producers argued that its *Belo* plan satisfied the second prong of the 207(f) test, because the duties of the equipment operators' jobs necessitated irregular work hours.

In support of its argument, Producers relied on the pay records and deposition testimony of several equipment operators, including Casey Foster, Nathaniel Jones, and named plaintiff Keith Jones. (Producers' MSJ, R. 62, Page ID #983–985.) That testimony established that these fluctuations were caused by the nature of the work, not scheduling decisions made by Producers. (Id.) Producers also filed the following relevant deposition transcripts with the District Court in support of its Motion: Jesus Casarez and Thomas Parks. (Deposition Transcripts, R. 57, 58, 59, 60, 61.)

In opposition, Plaintiffs-Appellees argued (among other things) that Producers' own scheduling practices were the cause of the fluctuations and Producers' regular rate of pay did not include bonuses for purposes of overtime calculations.

More specifically, Plaintiffs-Appellees argued that affording equipment operators the option to choose when to take their "weekends" or "off time" (either every week or every two weeks) was a deliberate manipulation of work irregularity. (Pls.' MPSJ, R. 53, Page ID # 637–638.) Importantly though, that argument was largely unsupported by the record. They also argued that Producers should have, but did not, include stage and quarterly bonuses in overtime calculations because those bonuses were not discretionary.

In its November 14, 2019 Opinion and Order, the District Court ruled that Producers' *Belo* plan was invalid. It based this ruling on its determination that the duties of Producers' employees did not necessitate irregular hours of work. (Opinion and Order, R. 67, Page ID # 1116.) Because the District Court found that Producers' plan did not meet one of the four elements for a valid *Belo* plan (irregular hours necessitated by the nature of the work), it did not address the other three elements and denied Producers' Cross-Motion for Summary Judgment.

The District Court acknowledged that Plaintiffs-Appellees worked irregular hours; but it determined that the irregularities resulted from employer and/or employee discretion rather than from work requirements. "This situation was not one where the hours depended on irregular and unpredictable occurrences outside of the employer's control…." (Opinion and Order, R. 67, Page ID # 1116.) It reached its conclusion despite acknowledging those parts of the record where

multiple equipment operators (and opt-in plaintiffs) agreed that the number of hours they worked was determined by the nature of the work. (Id., Page ID # 1104–1106.) In finding this evidence "unpersuasive," the Court concluded that the testimony was vague and did not provide an explanation as to "what about the work causes such fluctuation." (Id., R. 67, Page ID # 1115–1116.)

Producers appeals that decision.

## SUMMARY OF THE ARGUMENTS

Producers paid its equipment operators under a valid *Belo* plan. The nature of the oilfield industry meant that some weeks workers would have more than 40 hours of work, and other weeks they would not. Those fluctuations are inherent to the nature of Producers' industry and are not the result of creative scheduling. Producers submitted substantial evidence of the same, as well as all other requirements to demonstrate that its Belo plan was valid.  As such, the District Court erred in denying summary judgment in Producers' favor.

If the District Court believed that creative scheduling was the cause of the irregular work hours, there was record evidence to the contrary. That evidence includes testimony from at least three plaintiffs that the nature of their work was the cause of their irregular schedules. As such, the District Court erred in granting summary judgment in Plaintiff-Appellees' favor and should have set the case for trial.

## <u>ARGUMENT</u>

### I.    Standard of Review: *De Novo*

Producers appeals the District Court's denial of its summary judgment motion and the granting of Plaintiffs-Appellees' summary judgment motion. Both issues were decided upon summary judgment and are therefore reviewed under the same *de novo* standard. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373-74 (6th Cir. 2009).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(C). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

After the parties have presented the evidence, "the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This Court previously summarized the District Court's role on summary judgment as follows:

> The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). **In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited**. Rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). (Emphasis added.)

*Biegas*, 573 F.3d at 374 (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).

When there are cross motions for summary judgment, each is reviewed under the *Celotex* standard and evaluated on its own merits. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010). Here, both issues are reviewed *de novo*.

II.    **Producers paid its equipment operators under a valid *Belo* plan.**

The District Court erred in denying Producers' Motion for Summary Judgment. Producers' *Belo* plan was properly crafted to meet all four requirements of 207(f) and except it from the typical overtime requirements of the FLSA.

*Belo* plans are governed by 29 U.S.C. 207(f), which codified the holding of the *Belo* case. That provision states:

> **(f) Employment necessitating irregular hours of work**
>
> No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) if such employee is employed pursuant to a bona fide individual contract . . . if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 of this title (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified.

29 U.S.C. § 207(f).

At the District Court level, Plaintiffs-Appellees argued that Producers' *Belo* plan failed in two respects: (1) employees' work did not necessitate irregular work hours; and (2) the regular rate specified under the *Belo* plan did not account for certain bonuses. Based on those arguments, the parties agree that Producers' *Belo* plan satisfied requirements 1 and 4 of the 207(f) test. Prongs two and three were disputed, raising the questions of whether the employee's duties necessitated

irregular working hours and whether the regular rate specified by the parties' agreement properly excluded bonuses paid to employees.

A.    *The equipment operator's job duties inherently necessitated irregular working hours.*

Under 29 U.S.C. § 207(f), to have a valid *Belo* plan, employees' work hours must fluctuate both above and below 40 hours per week for reasons inherent in the nature of the work. Those fluctuations must be "beyond the employer's control" and not the result of "vacations, holidays, illness, or reasons personal the employee." 29 C.F.R. § 778.405.

The parties do not dispute that Plaintiffs-Appellees' work hours fluctuated both above and below 40 hours. (Opinion and Order, R. 67, Page ID # 1113.) Rather the dispositive question is "what caused the fluctuation?"

Based upon the employees' own testimony, it is clear that fluctuations below 40 hours were the result of the nature of their work. Plaintiff-Appellee Casey Foster confirmed this:

Q:    And the fluctuation in the number of hours per week that you worked was a result of the work, right, how much there was to do and—

FOSTER:    Right.

(Foster Depo., R. 58, Page ID # 734, 66:22–67:1.)

Plaintiff-Appellee Nathaniel Jones had the same response.

> Q:      So is it fair to say that how many hours you worked in a given
>         week over the course of your employment was just determined
>         by the work, right?
>
> N. JONES:  Yes.

(N. Jones Depo., R. 59, Page ID # 787–788, 97:9–98:4.)

Named Plaintiff-Appellee Keith Jones echoed their sentiment and provided

this explanation that the District Court ignored:

> Q:      So, this is from September 1st, 2015 through—this is just an
>         excerpt actually. So, you'll see at the bottom, it says 2 of 7
>         pages. So, what I've printed out is October—well, September
>         29th, 2015, and you'll see that on the week of October 11th,
>         2015 through October 17th of 2015, you have 22 hours worked
>         for that week. Do you believe that this record is accurate?
>
> K. JONES:  I believe so.
>
> Q:      So you would agree with me this is an example of a work week
>         that was less than 40 hours?
>
> K. JONES:  Yeah.
>
> Q:      **Do you have any idea what would have caused the decrease
>         in these hours?**
>
> K. JONES:  **Not having work.**
>
> Q:      **What do you mean not having work?**
>
> K. JONES:  **Not having a job to—a well to service.**
>
> Q:      **Why wouldn't you have a well to service?**
>
> K. JONES:  **Because of the downturn.**

Q:      **Downturn in the industry?**

K. JONES:  **Yes.**

Q:      On this very same sheet, you can see from October 4th through October 10th, you have 97 hours. That's well over 40, right?

K. JONES:  Correct.

Q:      **Do you have any idea what would have caused the increase in the hours that week?**

K. JONES:  **We were busy that week.**

(K. Jones Depo., R. 61, Page ID # 592, 50:8–51:9.)

Plaintiffs-Appellees' testimony demonstrates that the fluctuation in hours was the result of industry demand for well services—not Producers' choices. If there was industry demand for well services, equipment operators worked more than 40 hours per week. If such demand waned or mechanical problems developed on-site, equipment operators worked less than 40 hours per week. This was true regardless of whether an equipment operator elected a one- or two-week work cycle.

The District Court's discussion of the record dealt with Casey Foster and Nathaniel Jones' testimony, but did not address Keith Jones' testimony. Ignoring Keith Jones' testimony led the District Court to incorrectly deny Producers' Motion for Summary Judgment. (Opinion and Order, R. 67, Page ID # 1115–1116.)

B.   *The payment of discretionary bonuses did not invalidate Producers'* Belo *plan.*

Under the FLSA, "the regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," with certain enumerated exceptions. 29 U.S.C. § 207(e). Of note for present purposes, the regular rate does not include amounts paid to the employee at the sole discretion of the employer. 29 U.S.C. § 207(e)(3).

Under its Belo plan, Producers paid its oilfield technicians a guaranteed bi-weekly amount of $1,538.40 for all hours worked up to 60 hours. This figure is equivalent to an hourly rate of $10.99 for the first 40 hours, a time-and-a-half rate of $16.48 for hours 41-60. (Leeper Decl., R. 62, Page ID # 992, ¶ 24.)

In addition to full regular pay and overtime compensation, Producers paid its equipment operators discretionary bonuses. Plaintiffs-Appellees argued that the payment of those discretionary bonuses invalidated the *Belo* plan.

Specifically, Plaintiffs-Appellees argued that Producers' stage bonuses and quarterly bonuses were not discretionary. (Pls.' Br. in Supp. of MSJ, R. 55, Page ID # 661–664.)

In making that argument, Plaintiffs-Appellees relied on at least four federal regulations, including 29 CFR § 778.211, 29 CFR § 778.108, 29 CFR § 778.109, 29 CFR § 778.110. (Id., Page ID # 659–662.) Notably absent from that list, though, is the federal regulation that controls: 29 CFR § 778.408. It states:

In order to qualify as a "regular rate" under section 7(f) the rate specified in the contract together with the guarantee must be the actual measure of the regular wages which the employee receives. However, **the payment of extra compensation, over and above the guaranteed amount, by way of … year-end bonuses and similar payments which are not regularly paid as part of the employee's usual wages, will not invalidate a contract which otherwise qualifies under section 7(f)**.

29 C.F.R. § 778.408(d) (emphasis added).

The dispositive question for this line of inquiry is: were the bonuses "regularly paid as part of the employee's usual wages"? According to Plaintiffs-Appellees' testimony, **they were not**.

Casey Foster testified multiple times that Producers had discretion not to pay bonuses and that it exercised such discretion. (Foster Dep., R. 58, Page ID # 722, 21:14–20; Page ID # 731, 55:25–56:6; Page ID #735, 71:24–72:15.) Nathaniel Jones likewise testified that Producers had discretion not to pay bonuses and that it exercised such discretion. (N. Jones Dep., R. 59, Page ID # 774, 44:15–20; Page ID 778, 61:6–17.) Keith Jones did, too. (K. Jones Dep., R. 61, Page ID # 950, 44:6–24; Page ID # 951, 46:6–19, Page ID # 958, 76:13–77:20.)

According to Keith Jones, no one at Producers ever guaranteed its workers a bonus.

Q.    Did anyone at Producers ever guarantee you a bonus?

K. JONES.   No.

(Id., Page ID # 951, 48:19–21.)

18

Producers' 30(b)(6) witness, Thomas Parks, also testified that the bonuses –
whether stage or quarterly – were discretionary. (Parks Depo., R. 60, Page ID #
817 – 818, 37:25–41:12.) He identified reasons the quarterly bonuses were not paid
and said they were discretionary among management.  (Id., Page ID # 818, 39:4–
9.) He also identified reasons and times when stage bonuses were not paid, despite
workers completing the stages. (Id., Page ID # 818, 39:10–41:12.)

The record, including Plaintffs-Appellees' testimony shows that the bonuses
were not guaranteed. Producers retained the discretion to give or not give a bonus,
and there were pay cycles where Producers exercised that discretion. As such, the
bonuses were paid in accordance with 29 C.F.R. § 778.408(d) and did not
invalidate Producers' *Belo* plan.

Plaintiffs-Appellees attacked Producers' *Belo* plan on two prongs. First, they
argued that the irregularity of the hours was caused by creative scheduling. That is
not the case. The hours were the result of the boom-and-bust cycles in the industry
and mechanical problems outside Producers' control. Second, they argued that the
payment of certain bonuses were regularly paid as part of the equipment operators'
usual wages. They did not. Those bonuses were paid at the company's discretion,
and the company exercised that discretion from time to time.

Based on the foregoing, the District Court erred when it denied Producers'
Motion for Summary Judgment. This Court should reverse that decision and order

summary judgment in Producers' favor.

## III. At the very least, genuine issues of material fact existed relative to whether Producers controlled the irregularity of its workers' schedules.

If this Court is not inclined to order summary judgment in Producers' favor, it should still overturn the District Court's decision granting Plaintiffs-Appellees' Motion for Summary Judgment. The parties do not dispute that Plaintiffs-Appellees' work hours fluctuated both above and below 40 hours. (Opinion and Order, R. 67, Page ID # 1113.)

Instead, the cause for such irregularity—an issue of fact—was disputed by both parties in their cross motions for summary judgment. Both parties identified record evidence related to the cause of the irregular work hours. Despite that dispute, Producers submits that the record, taken in total, shows the dispute is one of principal, not substance.

Plaintiffs-Appellees argued that "Plaintiffs' schedules did not fluctuate as required by the Belo plan structure. Plaintiffs' schedules fluctuated according to the scheduling practices of Defendant." (Plaintiffs-Appellees' MPSJ, R. 52, Page ID # 284–285.) Because this is an issue of first impression in this district, Plaintiffs-Appellees relied heavily on *Donovan v. Welex*, 550 F. Supp. 855 (S.D. Tex. 1982). In that case, employees provided mathematical evidence in support of their motion for summary judgment showing that, in all but three weeks over a three-year period, fluctuations of hours below 40 were attributable to vacations and scheduled

off days. *Id.* at 857. Stated differently, in only .02% of weeks over the course of three years was the fluctuation under 40 hours due to work requirements. *Id.*

Attempting to analogize to the *Welex* case, Plaintiff-Appellees submitted pay records of DeAngelo Adams and other employees from 2015 to show instances of weeks with fewer than 40 hours that were also weeks where the employees had scheduled days off. (Pls.' Resp. to Def.'s MSJ, R. 64, Page ID #1029.)

But these records were not analogous to the *Welex* evidence. Notably, these samples came from only one year: 2015. That excludes the two years closest in time to the filing of this case. Additionally, the samples were just that—a small, hand-picked sample of weeks which allowed Plaintiffs-Appellees apophenia to run wild.

Plaintiffs-Appellees did not provide any insight to other weeks of work that fluctuated below 40 hours; nor did they provide any evidence that this "pattern" accounted for a significant number of the weeks where employees' hours fluctuated below 40. (Def.'s Reply in Supp. of MSJ, R. 66, Page ID # 1101.) In fact, in a footnote, Plaintiffs-Appellees admitted that there were weeks where employees' hours fell under 40 hours for reasons that were "not the result of scheduled days off." (Pls.' Resp. to Def.'s MSJ, R. 64, Page ID # 1031.)

Contrary to the District Court's findings, Producers did identify the reason for the fluctuation of hours: sometimes there was work for the equipment

operators, and sometimes there was not. In fact, multiple plaintiff-equipment operators confirmed that the fluctuation was caused by the nature of the work, not Producers' scheduling. Casey Foster put it this way:

> Q:     And the fluctuation in the number of hours per week that you worked was a result of the work, right, how much there was to do and—
>
> FOSTER:    Right.

(Foster Dep. 66:22 – 67:1.)

Nathaniel Jones had the same response:

> Q:     So is it fair to say that how many hours you worked in a given week over the course of your employment was just determined by the work, right? How much work there was to do?
>
> N. JONES:  Yes.
>
>              * * *
>
> Q:     It was all driven by the work, right?
>
> N. JONES:  Yes.

(Nathaniel Jones Dep. 97:9 98:4.)

And, as noted above, named plaintiff Keith Jones testified that the hours fluctuated based on the amount and nature of the work available to Producers, not scheduling choices made by the company. (K. Jones Depo., R. 61, Page ID # 592, 50:8–51:9.)

Despite this, the District Court found that there was no genuine issue of material fact regarding the cause of the equipment operators' irregular schedules. It concluded that those fluctuations occurred because of Producers' scheduling model. But that cannot be the case. Producers identified multiple portions of the record that demonstrate the fluctuations in the equipment operators' schedules were inherent in the nature of the work, not the whim of Producers.

Assuming, *arguendo*, that the District Court's determination was correct, it would serve only to defeat Producers' Motion for Summary Judgment not as good grounds to grant summary judgment in Plaintiffs-Appellees' favor. In order to uphold the District Court's decision, there must be no genuine issue of material fact, meaning the record must not have evidence that the cause of the irregularities was the nature of the work. But such evidence is in the record—from Plaintiffs-Appellees' own mouths.

Given the testimony from three of the plaintiffs, the District Court's decision necessarily ignored or improperly weighed evidence. Under *Biegas*, such evidentiary weighing is impermissible. Instead, the District Court was required to draw all inferences in the light most favorable to the non-moving party, Producers. *Matsushita*, 475 U.S. at 587.  As such, this Court should reverse the District Court's decision granting summary judgment in Plaintiffs-Appellees' favor.

## **CONCLUSION**

The oilfield industry operates in boom-and bust cycles. In addition to that, it is subject to stoppages resulting from mechanical failures. Those externalities influence the amount of work available to Producers, and ultimately the number of hours its equipment operators worked. Because those fluctuations are inherent to the work, Producers paid its equipment operators, Plaintiffs-Appellees, under a valid *Belo* plan.

In addition to their wages under the *Belo* plan, Producers paid its equipment operators discretionary bonuses. The workers understood those bonuses were discretionary, and they experienced pay periods where Producers exercised its discretion and did not pay bonuses. As such, the bonuses do not render Producers' *Belo* plan invalid.

With those two arguments resolved in Producers' favor, there remains no question that Producers paid its equipment operators in compliance with the law. As such, Defendant-Appellant Producers Services Corporation, respectfully request that the District Court's Order granting summary judgment in Plaintiffs-Appellees' favor be reversed and summary judgment ordered in Producers' favor.

[Signature block on following page.]

Respectfully submitted,

*s/ Nicholas S. Bobb*

Brendan Feheley          (0079107)
Nicholas S. Bobb          (0090537)
Danielle M. Crane          (0098994)
KEGLER, BROWN, HILL + RITTER
65 East State Street, Suite 1800
Columbus, Ohio 43215
Phone: (614) 462-5400
Fax: (614) 464-2634
bfeheley@keglerbrown.com
nbobb@keglerbrown.com
dcrane@keglerbrown.com

*Counsel for Defendant-Appellant Producers Services Corp.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Fed.R.App.P. 32(a)(7)(B)(i). Excluding the parts of the document exempted by Fed.R.App.P. 32(f), the foregoing brief contains 4,879 words and is 25 pages long. This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman (14 point) proportionally spaced type. The word processing software used to prepare this brief was Microsoft Word.

<u>*s/ Nicholas S. Bobb*</u>
Nicholas S. Bobb          (0090537)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing *Appellant's Principal Brief* was filed this 24th day of May, 2023, using the CM/ECF system which will send electronic notification to all counsel of record.

*s/ Nicholas S. Bobb*
Nicholas S. Bobb          (0090537)

**ADDENDUM**

**APPELLANT PRODUCERS SERVICES CORPORATION'S
DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Description of Document | Record Entry on District Court Docket |
|---|---|
| Complaint | R. 1 |
| Plaintiffs' Motion For Partial Summary Judgment | R. 53 |
| Plaintiffs' Brief in Support of MSJ | R. 55 |
| Deposition of Jesus Casarez | R. 57 |
| Deposition of Casey Foster | R. 58 |
| Deposition of Nathaniel Jones | R. 59 |
| Deposition of Thomas Parks | R. 60 |
| Deposition of Keith Jones | R. 61 |
| Defendant's Motion for Summary Judgment | R. 62 |
| Declaration of Frank Leeper | R. 62 |
| Plaintiffs' Response to Defendant's MSJ | R. 64 |
| Defendant's Reply in Supp. of MSJ | R. 66 |
| November 14, 2019 Opinion and Order | R. 67 |
| Consent Judgment | R. 133 |
| Notice of Appeal | R. 151 |