IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**KEITH JONES, on Behalf of Himself**                **PLAINTIFF-APPELLEE**
**and All Others Similarly Situated**


**vs.**                                **No. 23-3247**


**PRODUCERS SERVICES CORP.**            **DEFENDANT-APPELLANT**


*An Appeal from United States District Court for the*
*Southern District of Ohio, Case Number 2:17-cv-01086-EAS-KAJ*


**<u>APPELLEE'S BRIEF</u>**


APPELLEE'S COUNSEL:    JOSH SANFORD, ESQ.
                       SANFORD LAW FIRM, PLLC
                       KIRKPATRICK PLAZA
                       10800 FINANCIAL CENTRE PKWY SUITE 510
                       LITTLE ROCK, ARKANSAS 72211
                       TELEPHONE: (501) 221-0088
                       FACSIMILE: (888) 787-2040

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................2

TABLE OF AUTHORITIES ...........................................................3

STATEMENT IN SUPPORT OF ORAL ARGUMENT..........................5

JURISDICTIONAL STATEMENT........................................................6

STATEMENT OF ISSUES...................................................................8

STATEMENT OF THE CASE ............................................................9

SUMMARY OF THE ARGUMENT....................................................15

ARGUMENT ..................................................................................17

    I.     Standard of Review.............................................................17

    II.    The Court Properly Found that Defendant Had Not Provided Adequate Evidence to Support Its "Belo Plan" Defense. ...................18

        A.    Defendant did not provide evidence that its employees' hours fluctuated as a result of the nature of their job duties..........19

        B.    No valid Belo plan could exist without evidence of this kind of fluctuation...................................................................26

    III.   The Issue of Whether Bonuses Paid to Plaintiffs Were Discretionary Is Not Properly Before This Court..............................26

    IV.   Alternatively, the District Court Correctly Found that Plaintiffs Had Provided Evidence that the Bonuses Were Discretionary. .........28

CONCLUSION ................................................................................32

CERTIFICATE OF COMPLIANCE ....................................................34

CERTIFICATE OF SERVICE.............................................................35

ADDENDUM....................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Min & Kim Inc.*, No. 15-cv-14310, 2018 U.S. Dist. LEXIS 9507 (E.D. Mich. Jan. 22, 2018).................................................................................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................17

*Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394 (6th Cir. 2007).............17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...................................................17, 18

*CMCO Mortg., LLC v. Hill (In re Hill)*, 957 F.3d 704 (6th Cir. 2020)..................27

*Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148 (5th Cir. 1982).18, 19, 28

*Donovan v. Tierra Vista, Inc.*, 796 F.2d 1259 (10th Cir. 1986).............................20

*Donovan v. Welex, Div. of Halliburton Corp.*, 550 F. Supp. 855 (S.D. Tex. 1982) .................................................................................................................20, 21

*Escobar v. Rental Xpress, LLC*, Civil Action No. SA-14-CV-267-XR, 2015 U.S. Dist. LEXIS 68121 (W.D. Tex. May 26, 2015)..................................................32

*George v. Youngstown State Univ.*, 966 F.3d 446 (6th Cir. 2020)...................17, 18

*Gonzalez v. McNeil Techs., Inc.*, 2007 U.S. Dist. LEXIS 27262 (E.D. Va. Apr. 11, 2007) ..................................................................................................29, 30, 31

*Guarino v. Brookfield Township Trustees*, 980 F.2d 399 (6th Cir. 1992) .............23

*Harp v. Continental/Moss-Gordin Gin Co.*, 259 F. Supp. 198 (M.D. Ala. 1966) ..20

*JGR, Inc. v. Thomasville Furniture Indus.*, 550 F.3d 529 (6th Cir. 2008).............27

*Massa v. Advanced Vision Tech.*, No. 13 C 1169, 2014 U.S. Dist. LEXIS 195524 (N.D. Ill. Feb. 13, 2014).......................................................................................19

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989)................................24

**Statutes**

28 U.S.C. § 1291 ........................................................................................................6

28 U.S.C. § 1331 ........................................................................................................6

28 U.S.C. § 1367(a) ....................................................................................................6

29 U.S.C. § 201 ......................................................................................................6, 12

29 U.S.C. § 201 *et seq.* ..............................................................................................6

29 U.S.C. § 207 ............................................................................................15, 18, 29

29 U.S.C. § 216(b) ........................................................................9, 12

O.R.C. § 4113.15 ...........................................................................6, 12

O.R.C. §§ 4111.01, 4111.03 and 4111.10 .......................................6, 12

## Rules

29 C.F.R. § 778.211 ....................................................................29, 30

29 C.F.R. § 778.405 ....................................................................20, 21

Fed. R. Civ. P. 56 .......................................................................17, 22

## **<u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>**

Plaintiff requests oral argument. This case involves a rarely litigated and somewhat complex application of the overtime requirements of the Fair Labor Standards Act. This appeal also has procedural and jurisdictional complications, and Plaintiff believes oral argument would help clarify the issues and the grounds for upholding the District Court's decisions.

## JURISDICTIONAL STATEMENT

Plaintiff sued Defendant for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"); Ohio's Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, 4111.03 and 4111.10; and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15. Complaint, R. 1, Page ID # 1. The District Court had jurisdiction over FLSA claims pursuant to 28 U.S.C. § 1331 and pendent jurisdiction over OMFWSA and OPPA claims pursuant to 28 U.S.C. § 1367(a).

On November 14, 2019, the District Court issued the order which is the subject of this appeal, denying Defendant's motion for summary judgment and granting Plaintiff's motion for summary judgment on the issue of Defendant's liability but reserving the issues of the calculation method and amount of damages. Op. and Order; R. 67, Page ID # 1103–1118. After further litigation and negotiation, the parties agreed to a consent judgment. The District Court entered the judgment on February 23, 2023. Consent Judgment, R. 133, Page ID # 1427–1429. This judgment disposed of all parties' claims. Defendant filed its Notice of Appeal on March 23, 2023, specifying the order of November 14, 2019, as the order appealed. R. 134, Page ID # 1430. Accordingly, this Court has appellate jurisdiction under 28 U.S.C. § 1291 over issues resolved in the November 14 order.

In Defendant's Brief, Defendant raises an issue the District Court resolved in a further order on January 28, 2020 (specifically, whether a genuine issue of fact

exists as to whether bonuses paid to Plaintiffs were discretionary). R. 72, Page ID # 1257–1278. Defendant did not appeal the relevant order, and Plaintiff denies that this Court has jurisdiction over this issue. *See* Notice of Appeal, R. 134, Page ID # 1430 ("It is ultimately that November 14, 2019, Judgment that decided liability which Appellant hereby appeals.").

## STATEMENT OF ISSUES

The issues for review are as follows:

1.      Whether the District Court properly determined that Defendant's purported Belo plan was invalid because no genuine issue of material fact was present to allow a jury to conclude that Plaintiffs' work hours fluctuated for reasons inherent to their job duties rather than because of Defendant's scheduling practices.

2.      Whether this Court has jurisdiction to review the District Court's decision, set out in an order Defendant chose not to appeal, that a genuine issue of material fact remained regarding whether bonuses paid to Plaintiffs were discretionary.

3.      Alternatively, whether the District Court correctly held that a genuine issue of material fact precluded summary judgment for Defendant on the issue of whether the bonuses announced to, expected by, and paid to Plaintiffs were discretionary.

## STATEMENT OF THE CASE

A. Statement of the Facts

Plaintiffs-Appellees[1] all worked for Defendant-Appellant Producers Services Corporation as oilfield equipment operators, a non-management oilfield operations position. Decl. Casarez ¶ 3, R. 7-8, Page ID # 90; Dep. Parks 14:10–21, R. 60, Page ID # 812. Defendant provides high pressure pumping, shale fracturing and acidizing, and water pumping services to its customers in the oil and gas industry. *See* Decl. Casarez ¶ 4, R. 7-8, Page ID # 90; Dep. Parks 9:9–12, R. 60, Page ID # 810. Plaintiffs provided the manual labor required to assist in pumping and fracking oil wells at well sites, including loading, maneuvering, assembling, operating and disassembling the equipment involved in the pumping and fracking processes. Decl. Casarez ¶¶ 5, 9, R. 7-8, Page ID # 90–91; Dep. Parks 15:7–24, R. 60, Page ID # 812.

The work Defendant performed for its customers generally required 24-hour operations, so Defendant's employees worked one of two 12-hour shifts and typically stayed in man-camps or hotels between shifts. Dep. Parks 20:18–22:1, R. 60, Page ID # 813. Plaintiffs regularly worked more than forty hours per week for

---

[1]    Plaintiffs include the original named Plaintiff Jesus Casarez, the substituted named Plaintiff Keith Jones, and plaintiffs who opted in to the lawsuit under the collective action mechanism provided under 29 U.S.C. § 216(b).

Defendant. *See* Def.'s Timesheets for Pls., R. 52-5, Page ID # 528–586. Defendant scheduled Plaintiffs to work one of three different schedules: fourteen days on and seven days off, seven days on and four off, or seven days on and three days off. Dep. Parks 17:25–18:17, R. 60, Page ID # 812–813. Defendant offered these varying schedules as a way of managing its workforce and so that employees could have options for being home rather than out on the job for two straight weeks. Dep. Parks 17:25–18:17, 19:8–23, R. 60, Page ID # 813. The total labor of Defendant's employees should have been the same regardless of which schedule they chose to work. Dep. Parks 19:24–20:5, R. 60, Page ID # 813. When Plaintiffs were off, the fracking job did not necessarily stop, but rather would continue with other equipment operators working in Plaintiffs' stead. Dep. Parks 20:6–17, R. 60, Page ID # 813. Employees had an outlook of at least several weeks on how much work they had upcoming. N. Jones Dep. 98:5–17, Page ID # 788.

Defendant purported to pay Plaintiffs according to a "Belo contract," an exception to the general overtime premium requirements of the FLSA. In support of this contention, Defendant relies on a document entitled "Terms of Agreement," which purports to establish a "Belo bi-weekly pay schedule." *See* Terms of Agreement, R. 15-1, Page ID # 132. According to the Terms of Agreement, Defendant agreed to pay Plaintiffs a specific bi-weekly amount, such as "$1,538.00 payable bi-weekly on Friday" in the case of Plaintiff Casarez, and the Terms of

Agreement state that the contract is for 60 hours per week "with additional overtime after 60 hours." R. 15-1, Page ID # 132.

Defendant also agreed to pay "stage pay . . . at the current rate per customer job site," along with the base pay and additional hourly rate after sixty hours. R. 15-1, Page ID # 132. Stage pay was composed of bonuses paid out when employees helped complete "stages" of Defendant's fracking process at well sites. Dep. Parks 25:9–19, 57:23–58:5, R. 60, Page ID # 814, 822–823; Dep. Casarez 41:24–42:2; R. 57, Page ID # 677. All Plaintiffs received stage pay during their employment with Defendant, and equipment operators expected to receive stage bonuses except when bonuses were withheld based on safety violations, performance issues or for disciplinary reasons. *See* Dep. Casarez 42:1–2, 92:3–6, 93:6–94:10, R. 57, Page ID # 677, 689–90; Dep. Parks 26:22–24, 39:14–20, 40:3–10, R. 60, Page ID # 815, 818. Plaintiffs were also eligible to receive quarterly bonuses depending on the number of days worked, Defendant's profitability, and employee dependability, performance and attitude. Dep. Parks 37:25–38:8, 38:12–17, 43:18–44:12, R. 60, Page ID # 818–819. Neither stage bonuses nor quarterly bonuses were included in the overtime wage calculations for Plaintiffs. Dep. Parks 42:19–43:2, R. 60, Page ID # 819.

B. <u>Procedural History</u>

Plaintiff Jesus Casarez[2] filed his Original Complaint on December 14, 2017, alleging that Defendant had violated the FLSA, 29 U.S.C. § 201, *et seq.*; Ohio's Minimum Fair Wage Standards Act, O.R.C. §§ 4111.01, 4111.03 and 4111.10; and the Ohio Prompt Pay Act, O.R.C. § 4113.15; by failing to pay its equipment operators a lawful overtime premium for all hours worked over 40 per week. Complaint, R. 1, Page ID # 1, 5-6. The Court conditionally certified the case as a collective action under 29 U.S.C. § 216(b) (*see* Op. and Order, R. 18, Page ID # 163–178), and the other Plaintiffs joined through the collective action's opt-in mechanism.

On August 14, 2019, Plaintiff moved for summary judgment on the issue of whether Defendant's purported Belo plan was a viable defense. Pl.'s Mot. Summ. J. Regarding Belo Contract, R. 52, Page ID # 283–285. Plaintiff argued (a) that Plaintiffs' schedules fluctuated according to Defendant's scheduling practices, not because of the inherent nature of Plaintiffs' job duties as required for a Belo plan, and (b) that Defendant invalidated any possible Belo plan by paying non-discretionary bonuses which were not included in Plaintiffs' regular rate of pay when

---

[2]     Plaintiff Keith Jones was later substituted as the named plaintiff. *See* Order, R. 131, Page ID # 1421.

calculating overtime premiums. R. 52, Page ID # 284–285. On August 26, 2019, Defendant filed a cross-motion for summary judgment, asking the Court to rule that Defendant's Belo plan was valid. R. 62, Page ID # 974.

The Court resolved both motions on the basis of a single issue on November 14, 2019. Op. and Order, R. 67, Page ID # 1103–1118. Specifically, the Court held that Defendant had not met its burden to produce evidence that "the cause of the irregular hours is inherent in the nature of the work and beyond its control and thus, Plaintiff has shown he is entitled to summary judgment." R. 67, Page ID # 1116. Defendant's failure to produce evidence on this prong of a true Belo contract was enough to invalidate the defense, so the Court at this stage did not reach the issue of whether the bonuses were discretionary or whether their payment would alternatively have invalidated an otherwise legitimate Belo contract. R. 67, Page ID # 1112. The Court did, however, order further briefing on the issue of how damages should be calculated. R. 67, Page ID # 1117.

On January 28, 2020, the Court issued an order resolving Plaintiff's motion for summary judgment on the issue of damages. R. 72, Page ID # 1257–1278. In this order, the Court reached the issue of whether the stage and quarterly bonuses paid to Plaintiffs were non-discretionary and thus part of the regular rate of pay. R. 72, Page ID # 1263–1273. After an extensive discussion of the law regarding discretionary and non-discretionary bonuses and the evidence on both sides in this case, the Court

concluded that a genuine issue of material fact remained as to whether the bonuses were discretionary. R. 72, Page ID # 1273.

The parties eventually reached an agreement, which they asked the Court to enter as a consent judgment. The Court did so on February 23, 2023. R. 133, Page ID # 1427–1429. In the consent judgment, Defendant "reserve[d] the right to appeal the Court's summary judgment decisions (Doc. #67, Doc. #72)." R. 133, Page ID # 1429. On March 23, 2023, Defendant filed a Notice of Appeal, specifying that it was the "November 14, 2019, Judgment that decided liability which Appellant hereby appeals." R. 134, Page ID # 1430. Neither the Notice of Appeal nor Defendant's appeal brief mentions the order from January 28, 2020, which resolved the issue of whether the nature of the bonuses could be decided on summary judgment.

## SUMMARY OF THE ARGUMENT

Eschewing the typical overtime requirements of the Fair Labor Standards Act, Defendant purported to pay its employees according to a "Belo plan" under 29 U.S.C. § 207(f), paying a fixed amount for the first 60 hours of work each week, then overtime premiums on top of that sum when an employee worked more than 60 hours. The District Court found Defendant liable on summary judgment for unpaid overtime premiums, however, because Defendant did not meet the requirements that allow an employer to escape the ordinary obligations of the FLSA through a Belo plan.

First, Defendant could not show that Plaintiffs' work hours fluctuated as a result of variability inherent in their job duties. Belo plans are only legally sufficient when the nature of the employee's work prevents both employer and employee from controlling or anticipating how many hours the employee will work from week to week. Here, ample evidence demonstrated that Plaintiffs' variable hours stemmed from Defendant's scheduling practices and Plaintiffs' time off; Defendant did not provide evidence to contradict this showing. The only evidence possibly to the contrary was vague deposition testimony (including testimony which Defendant did not rely on in the District Court and cannot be considered on appeal) that provided no real alternative explanation and was insufficient to defeat summary judgment.

Because the payment of nondiscretionary bonuses on top of a purported Belo plan will invalidate the plan, Defendant also argues that the stage and quarterly bonuses it paid Plaintiffs on a regular basis were discretionary, but Defendant has forfeited this argument. Defendant has appealed only the order in which the District Court decided the issue of the fluctuating hours, not the subsequent order in which the Court found that evidence on both sides of the question precluded summary judgment on the nature of the bonuses. Because Defendant did not appeal that decision, the Court's holding that a jury could find that the bonuses were nondiscretionary must stand.

Even if Defendant had appealed the Court's decision on the bonus issue, though, the evidence that Defendants announced the bonuses to employees ahead of time to incentivize employee performance and that Plaintiffs regularly received and expected to receive bonuses is more than enough to keep the question open. No court could legitimately find that the bonuses were unambiguously discretionary under these circumstances; it is a question for a factfinder. With the question of whether the bonuses were discretionary still open, Defendant cannot be entitled to judgment that its Belo plan was valid as a matter of law. The District Court's decisions must be upheld.

# ARGUMENT

## I.    Standard of Review.

An order on a summary judgment motion is reviewed *de novo*, applying the same standard used in the district court. *See George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020). Rule 56 provides that summary judgment is proper when no genuine issues of material fact remain in a case and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of informing the court of the basis for its motion and identifying the pleadings, admissions, discovery documents, and affidavits it contends show the absence of a genuine issue of material fact. *Id*. at 323.

If the moving party has met its initial burden, then the nonmovant must go beyond its own pleadings to designate specific controverted facts raising genuine triable issues. *Id.* at 325. The facts must be specific and material, and "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Furthermore, a movant may be entitled to summary judgment based on a lack of evidence "when the nonmoving party 'fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *George*, 966 F.3d at 458 (quoting *Celotex Corp.*, 477 U.S. at 322).

## II. The Court Properly Found that Defendant Had Not Provided Adequate Evidence to Support Its "Belo Plan" Defense.

The FLSA creates financial obligations upon employers such as Defendant, including the requirement that for every hour worked over 40 per week, the employer must pay a premium rate of 1.5x the employee's "regular rate" of pay. 29 U.S.C. § 207. Defendant staked its compliance with the FLSA on its purported "Belo plan." A Belo plan is a method of paying hourly employees that, when properly implemented, permits payment of a fixed sum covering a certain number of hours; the fixed sum includes the "regular rate" plus overtime for those hours, but the employer must also compensate for overtime hours worked in excess of the hours covered by that base sum—here, allegedly 60 hours per week. *See* 29 U.S.C. § 207(f); *see also, e.g.*, *Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 152–53 (5th Cir. 1982).

As with other exceptions to the overtime obligations of the FLSA, the employer has the burden to affirmatively prove the elements of a Belo plan; the employee need not affirmatively disprove its existence. *See Brown Equip. & Serv. Tools*, 666 F.2d at 153. For a valid Belo plan to exist, the employer must establish that:

18

> (1) the duties of the employee necessitate irregular work hours; (2) payment be made pursuant to a bona fide individual agreement; (3) the contracts with the employees . . . specify a regular rate of pay of not less than the minimum hourly rate provided in this title and compensation at not less than one and one-half times such rate for all hours worked in excess of a maximum workweek; and (4) provides for a weekly guaranty of pay for not more than sixty hours based on the rates so specified.

*Massa v. Advanced Vision Tech.*, No. 13 C 1169, 2014 U.S. Dist. LEXIS 195524, at *4–5 (N.D. Ill. Feb. 13, 2014) (internal quotation and editing marks omitted).

A Belo plan is "a narrow exception to the overtime requirement for a carefully defined category of guaranteed wage plans." *Brown Equip. & Serv. Tools*, 666 F.2d at 153. There are many pitfalls to establishing a valid Belo plan, including hours that do not fluctuate above and below forty hours per week, fluctuation of hours that are within the control of the employer, and failure to include certain bonuses in the "regular rate" of pay. *See, e.g.*, *Massa*, 2014 U.S. Dist. LEXIS 195524, at *7–8; *Acosta v. Min & Kim Inc.*, No. 15-cv-14310, 2018 U.S. Dist. LEXIS 9507, at *27–29 (E.D. Mich. Jan. 22, 2018).

A.    <u>Defendant did not provide evidence that its employees' hours fluctuated as a result of the nature of their job duties.</u>

The District Court found the Belo plan invalid because Defendant did not show that the hours worked by Plaintiffs fluctuated for reasons inherent to the nature of the work. Op. and Order, R. 67, Page ID # 1116. The Belo exception was created to provide stable salaries for employees whose work weeks fluctuate because of the

19

*inherent nature of the job* and who would otherwise face financial burdens from below-normal work weeks. *Donovan v. Welex, Div. of Halliburton Corp.*, 550 F. Supp. 855, 858 (S.D. Tex. 1982); *Donovan v. Tierra Vista, Inc.*, 796 F.2d 1259, 1260–61 (10th Cir. 1986). The fluctuations in hours each week "must be beyond the employer's control" and not the result of the employer's scheduling practices or "vacations, holidays, illness or reasons personal to the employee." *Welex, Div. of Halliburton Corp.*, at 856, 858. Instead, "[t]he nature of the employee's duties must be such that neither he nor his employer can either *control or anticipate with any degree of certainty* the number of hours he must work from week to week." 29 C.F.R. § 778.405 (emphasis added); *see also Harp v. Continental/Moss-Gordin Gin Co.*, 259 F. Supp. 198, 200 (M.D. Ala. 1966) (finding that where plaintiff employees were told ahead of time how much each one would be working the next week, "[s]uch controlled employment . . . is contrary to the requirements of a 'Belo' contract").

Here, Defendant systematically scheduled periods of reduced work for its employees. Specifically, in order to manage its workforce and to provide employees with the opportunity to be home, Defendant offered Plaintiffs three different schedules: fourteen days on and seven days off, seven days on and four off, or seven days on and three days off. Dep. Parks 17:25–18:17, 19:8–23, R. 60, Page ID # 813. When Plaintiffs were off, the fracking job did not necessarily stop, but rather would continue with other equipment operators working in Plaintiffs' stead. Dep. Parks

20:6–17, R. 60, Page ID # 813. Accordingly, when Plaintiffs worked less than 40 hours per week, the reduced number of hours worked was not the result of the fluctuating and unpredictable demands of Defendant's business, but rather Defendant intentionally scheduled time off for its employees. Thus the fluctuations were coordinated and intended by the Defendant.

Because fluctuations in working hours must "result from work requirements," weeks falling below 40 from factors in the employer and employee's control do not count toward resolving whether hours actually fluctuate. *Donovan v. Welex, Div. of Halliburton Corp.*, 550 F. Supp. at 858–59. Where hours fluctuated below forty per week, the fluctuation was the result of factors within Defendant's control (i.e., scheduling) or the employee's control (i.e., vacation and sick leave). To the extent that Plaintiffs' hours fluctuated within a range *above* 40 per week, this is not a sufficient fluctuation in hours to support a Belo plan. *Id.* at 856–57; 29 C.F.R. §§ 778.405 ("duties must necessitate significant variations in weekly hours of work both below and above the statutory weekly limit on nonovertime hours").

The fluctuations in Plaintiffs' working hours are not the types of fluctuations that Belo plans were intended to address. To take advantage of a Belo plan and its exception to the normal method of calculating the regular rate, weekly hours must fluctuate as a result of the *inherent nature of the job*, not due to the employer's coordinated scheduling practices, as was the case here.

The only evidence Defendant provided to the contrary in the District Court was two snippets of deposition testimony from Plaintiffs Nathaniel Jones and Casey Foster, who agreed (in response to very leading questions) that their hours varied based on "the work." Op. and Order, R. 67, Page ID # 1115. The Court examined this testimony but concluded that it was "vague" and unsupported by any explanation of what about the work could cause the fluctuation beyond the Defendant's choice to implement a coordinated schedule that included reduced hours. R. 67, Page ID # 1115.

Trying to manufacture a genuine dispute on this issue, Defendant relies on testimony that is not properly before this court. Defendant leans heavily in its appeal brief on the testimony of Keith Jones, accusing the District Court of "ignoring" Keith Jones's testimony, while acknowledging that the Court accounted for Casey Foster's and Nathaniel Jones's testimony. Appellant's Br. 16. Indeed, Defendant goes so far as to claim that the District Court denied Defendant's motion for summary judgment because of omitting this testimony. *Id.* However, before the District Court, Defendant never cited the testimony it now makes so much of; Defendant "ignored" the same testimony it claims the District Court should have considered. On the contrary, while a district court is free to look at other parts of the record when considering a summary judgment motion, it "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3).

What is more, the factual record as presented to the district court is the same record to be considered on appeal:

> The facts presented and designated by the moving party were the facts at hand to be dealt with by the trial court. Furthermore, their status as "the facts at hand" is maintained intact here on review. This Court will not entertain on appeal factual recitations not presented to the district court any more readily than it will tolerate attempts to enlarge the record itself.

*Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). This principle exists for good reason; allowing a party to introduce new material when the record is closed gives the other party no opportunity to respond properly.

The fact of *de novo* review does not change this dynamic. Instead, the appellate court considers "whether the facts, *as presented by defendants*, required a determination that they were entitled to judgment as a matter of law." *Id.* at 407 (emphasis added). Once the nonmoving party responds or fails to respond in the lower court, "its case is wagered." *Id.* at 405. The same holds true on appeal. An appeal is not a chance for a party to redraw its case now that it has seen how the district court dealt with the original picture.

Ultimately, though, the addition of Keith Jones's testimony makes no difference because his testimony suffers from the same lack of specificity as Nathaniel Jones's and Casey Foster's. Defendant's reliance on deposition testimony of Plaintiffs in which they agreed that fluctuations in hours worked per week were "the result of the work," "determined by the work," "how much there was to do,"

and "driven by the work," does not create a genuine issue of material fact. It is not even clear that Plaintiffs are referring to the inherent nature of the work causing the fluctuations or simply their work schedules causing the variations in the working hours. *Welex*, 550 F. Supp. at 858 (noting Belo plan requirement that the employees' work weeks must fluctuate as a result of the *inherent nature of the job*). In other words, this testimony is far too ambiguous and speculative to support a genuine issue of material fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (noting that "not every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion").

By contrast, Plaintiffs provided extensive evidence that employees' low hours came in weeks when the employees were scheduled to have time off. Pl.'s Resp. Def.'s Mot. Summ. J., R. 64, Page ID # 1028–1025. The Court looked to this evidence, as well as to Defendant's own testimony that its scheduling practices were driven by a need to manage its workforce and allow employees to be home, and that a job could continue while an employee had time off. Op. and Order, R. 67, Page ID # 1112–1115. It considered the fact that employees knew weeks in advance how much work they had upcoming. Op. and Order, R. 67, Page ID # 1116; N. Jones Dep. 98:5–17, Page ID # 788. All these practices are incompatible with the inherent irregularity of hours required for a valid Belo contract. Conclusory assertions to the

24

contrary amount to no more than the mythical "scintilla" of evidence that cannot ward off summary judgment.

It's easy to imagine the kind of evidence Defendant could have produced, had Plaintiffs' job duties in fact fluctuated due to demand or their job duties. Surely if that were so, Defendant could have pointed to emails or text messages to employees, letting them know that there was no demand for work the next week, or some sort of communication about broken-down equipment, or messages from their customers about not needing well servicing. Defendant at least could have offered a declaration that explained how the nature of Plaintiffs' job duties drove the variation in hours, in spite of the fact that Plaintiffs were regularly scheduled for time off and that work could continue without a particular operator on the job. *Something* concrete, more than vague assertions that "the fluctuations in the equipment operators' schedules were inherent in the nature of the work." Appellant's Br. 23. As the District Court noted, Producers provided "no explanation as to what about the work causes such fluctuation. For example, Defendant [did] not provide any facts to show that the travel time, the complexity of the work, or the type of work being done makes the nature of the hours worked irregular." Op. and Order 13, Page ID #1115. Defendant had the opportunity to provide all kinds of evidence and failed. It is too late now.

B.    <u>No valid Belo plan could exist without evidence of this kind of fluctuation.</u>

The lack of evidence that Plaintiffs' hours fluctuated by the nature of their job duties sank Defendant's Belo plan defense. To escape the ordinary requirements of the FLSA, Defendant had to prove every element of a Belo plan. Defendant did not provide the necessary evidence, and the District Court as a result rightly denied summary judgment to Defendant and granted summary judgment to Plaintiffs on the issue of Defendant's liability.

### III.    The Issue of Whether Bonuses Paid to Plaintiffs Were Discretionary Is Not Properly Before This Court.

Insisting that the District Court should have granted its summary judgment motion, Defendant also argues it is entitled to a judgment that stage and quarterly bonuses were discretionary and therefore properly excludable from Plaintiffs' "regular rates of pay." The threshold problem is that the District Court already decided this issue, but Defendant did not appeal that decision.

In the order on the parties' cross-motions for summary judgment, the only order Defendant has appealed, the lack of evidence that Plaintiffs' hours fluctuated on account of their job duties was dispositive, and so the Court did not reach the issue of whether the bonuses were discretionary. Op. and Order, R. 67, Page ID # 1112, 1116. After further briefing on the issues of damages and how they should be calculated, though, the Court addressed the nature of the bonuses extensively and

found that there was evidence on both sides, precluding summary judgment. Op. and Order, R. 72, Page ID # 1257–1273.

Defendant is now asking this Court to find, as a matter of summary judgment, that the bonuses were discretionary, but Defendant only appealed the first order, and "appellate jurisdiction extends only to the areas of a judgment specified in the notice of appeal." *JGR, Inc. v. Thomasville Furniture Indus.*, 550 F.3d 529, 533 (6th Cir. 2008); *see also CMCO Mortg., LLC v. Hill (In re Hill)*, 957 F.3d 704, 710 (6th Cir. 2020) (refusing to consider an order on appeal where the appellant specified other orders in the notice of appeal but did not list the order in question).

Defendant pointedly did *not* appeal the January order that addressed the nature of the bonuses. Defendant was certainly aware of the option; the Consent Judgment explicitly reserved the right to appeal both summary judgment decisions. R. 133, Page ID # 1428. Defendant's Notice of Appeal is quite specific, though—it is the "November 14, 2019, Judgment that decided liability which Appellant hereby appeals." R. 134, Page ID # 1430. Nor does Defendant's appeal brief mention the second order, even though it decided the issue Defendant is now trying to relitigate, and Defendant's Addendum, designating the relevant district court documents, does not include the January order. *See* Appellant's Br. 28. Defendant clearly decided not to appeal the order that found genuine issues of material fact as to the discretionary

27

nature of the bonuses. Accordingly, this Court does not have jurisdiction over this issue, and the District Court's original order must stand.

As Defendant tacitly acknowledges, the payment of non-discretionary bonuses as part of an employee's wages invalidates a Belo plan because the rate specified in the contract is no longer the true regular rate, which varies with the amount of the bonuses. *See Donovan v. Brown Equipment & Service Tools, Inc.*, 666 F.2d 148, 154 (5th Cir. 1982). With the very real possibility that a jury could find the bonuses non-discretionary, Defendant cannot be entitled to summary judgment on liability.

## IV.    Alternatively, the District Court Correctly Found that Plaintiffs Had Provided Evidence that the Bonuses Were Non-Discretionary.

Even if the issue of the discretionary nature of the bonuses were properly before this Court, though, the District Court's finding of genuine issues of material fact should be upheld. Plaintiffs provided ample evidence from which a jury could conclude that the bonuses were non-discretionary.

Defendant wrongly argues as if any time a company retains the right not to pay a bonus under some circumstance, the bonus remains discretionary. This is simply not the state of the law. The key to determining whether a bonus is discretionary lies in "whether it has been promised to the employee, *even if that promise is attended by certain conditions and the employee understands that a bonus*

*might not be paid.*" *Gonzalez v. McNeil Techs., Inc.*, 2007 U.S. Dist. LEXIS 27262, *12 (E.D. Va. Apr. 11, 2007) (emphasis added). In order for a bonus to qualify as a *discretionary* bonus, "both the fact that payment is to be made and the amount of the payment [must be] determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3); 29 C.F.R. § 778.211(a). In further delineating discretionary bonus standards, the regulations state:

> The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it. Thus, if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees. Such a bonus would not be excluded from the regular rate under section 7(e)(3)(a). Similarly, an employer who promises to sales employees that they will receive a monthly bonus computed on the basis of allocating 1 cent for each item sold whenever, [in] his discretion, the financial condition of the firm warrants such payments, has abandoned discretion with regard to the amount of the bonus though not with regard to the fact of payment. Such a bonus would not be excluded from the regular rate.

29 C.F.R. § 778.211(b); *see also Gonzalez*, 2007 U.S. Dist. LEXIS 27262 at *13 ("The clear thrust of § 207 is that once a bonus is promised to an employee as an inducement to achieve some business goal, even if that promise is not a guarantee of payment but contingent on other factors such as the financial state of the company,

29

it is to be included in the regular rate of pay if and when it is actually paid.").

The presumption is that monies paid to an employee by an employer should be calculated in the regular rate, and the "burden is on the employer to overcome the presumption and prove that some amount falls within one of the exceptions in § 207(e)." *Gonzalez*, 2007 U.S. Dist. LEXIS 27262, *8–9.

Here, Defendant paid Plaintiffs two different non-discretionary bonuses that defeat the validity of Defendant's alleged Belo plan because they must be included in the regular rate of pay but were not: stage pay and quarterly bonuses. The presumption is that these bonuses should be included in Plaintiffs' "regular rate," and it is Defendant's burden to prove otherwise.

Stage pay and quarterly bonuses were non-discretionary because they were promised in advance to incentivize Plaintiffs and were calculated according to objective criteria. Stage pay was referenced in the Terms of the Agreement, bonuses were referenced in the Employee Handbook, and Defendant intended to and attempted to inform Plaintiffs of the bonus plans. Dep. Parks 65:6–66:8, R. 60, Page ID # 824; Terms of Agreement, R. 15-1, Page ID # 132. The advance promise to pay renders the stage pay non-discretionary. 29 C.F.R. § 778.211(b); *see also Gonzalez*, 2007 U.S. Dist. LEXIS 27262 at *13. The purpose of the bonuses was to incentivize efficient, safe and productive work. Dep. Parks 31:2–10, 31:17–20, R. 60, Page ID # 816. For incentives to be effective, they necessarily must be communicated to

potential recipients in advance.

Objective criteria guided the payment of bonuses. Stage pay was paid at a rate of $40.00 to $50.00 per completed stage to those employees who worked part of the 24-hour shift. Dep. Parks 25:9–19, 57:23–58:5, R. 60, Page ID # 814, 822–823; Dep. Casarez 42:24–43:2, R. 57, Page ID # 677. Quarterly bonuses were based on corporate profitability and employee evaluations. Dep. Parks 38:12–17, 43:18–44:16, 44:23–45:18, R. 60, Page ID # 818–819. Although bonuses might be withheld for safety violations, performance issues or disciplinary reasons, this does not defeat the non-discretionary nature of the bonuses. *See* Dep. Parks 39:14–20, 40:3–10, R. 60, Page ID # 818. It does not matter that a bonus might be contingent upon other factors such as the employer's financial state; "it is to be included in the regular rate of pay if and when it is actually paid." *Gonzalez*, 2007 U.S. Dist. LEXIS 27262 at *13.

Stage pay and quarterly bonuses are the type of non-discretionary bonuses that must be included in the regular rate. Plaintiffs regularly received both of those bonuses. *See, e.g.*, Def.'s Pay Summaries for Pl. DeAngelo Adams, R. 52-4, Page ID # 480–527. This ample evidence of the non-discretionary bonuses easily balances out Defendant's contention that the bonuses were purely discretionary, and the District Court rightly refused summary judgment to Defendant on this issue.

To be a valid Belo plan, the agreement between the employer and employee must identify the regular rate of pay, or at least provide a formula for doing so. *Escobar v. Rental Xpress, LLC*, Civil Action No. SA-14-CV-267-XR, 2015 U.S. Dist. LEXIS 68121, at *21–23 (W.D. Tex. May 26, 2015). Accordingly, if the regular rate cannot be ascertained from the alleged Belo agreement, no valid agreement exists. The inclusion of non-discretionary bonuses in Plaintiffs' compensation package would defeat a Belo plan because the stage pay renders the parties incapable of specifying the regular rate in advance as is required by a Belo plan; thus, without the nature of the bonuses settled, the Court could not properly hold that Defendant had a valid Belo plan.

## <u>CONCLUSION</u>

Riddled with procedural problems and attempts to reach back and invisibly rewrite the past, Defendant's appeal must fail, and the District Court's decisions, rooted soundly in law and fact, should be upheld.

Respectfully submitted,

**APPELLEE KEITH JONES, on Behalf of Himself and All Others Similarly Situated**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
TELEPHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

*Counsel for Plaintiff-Appellee Keith Jones*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff-Appellee, furnishes the following in compliance with Fed. R. App. P. 32(g) and 6 Cir. R. 32(a):

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,309 words, including headings, footnotes and quotations, and excluding only those items excluded under Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman.

Dated: June 29, 2023

_____
**Josh Sanford**
**Counsel for Appellee**

## **CERTIFICATE OF SERVICE**

I, Josh Sanford, hereby certify that, on June 29, 2023, a true and correct copy of Appellee's BRIEF, was served by email on the following:

Brendan Feheley, Esq.
Nicholas S. Bobb, Esq.
Danielle M. Crane, Esq.
KEGLER, BROWN, HILL + RITTER
65 East State Street, Suite 1800
Columbus, Ohio 43215
Telephone: (614) 462-5400
Facsimile: (614) 464-2634
bfeheley@keglerbrown.com
nbobb@keglerbrown.com
dcrane@keglerbrown.com

*/s/ Josh Sanford*
**Josh Sanford**

# ADDENDUM

Designation of Relevant District Court Documents

| Entry No. | Description | Page ID #s |
|---|---|---|
| R. 1 | Complaint | # 1–14 |
| R. 7-8 | Decl. of Jesus Casarez | # 89–93 |
| R. 15 | Terms of Agreement | # 132 |
| R. 52 | Pl.'s Mot. for Partial Summary Judgment re Belo Contract | # 283–287 |
| R. 52-4 | DeAngelo Adams' Pay Statements | # 480–527 |
| R. 52-5 | Timesheets for Plaintiffs | # 528–586 |
| R. 53 | Brief in Support of Pl.'s Mot. for Partial Summary Judgment re Belo Contract | # 625–648 |
| R. 57 | Depo. of Jesus Casarez | # 667–693 |
| R. 60 | 30(b)(6) Depo. of Thomas Parks | # 808–828 |
| R. 62 | Def.'s Motion for Summary Judgment | # 974–991 |
| R. 63 | Def.'s Response to Pl.'s Motion for Summary Judgment | # 997–1006 |
| R. 64 | Pl.'s Response to Def.'s Motion for Summary Judgment | # 1007–1036 |
| R. 65 | Pl.'s Reply in Support of Motion for Partial Summary Judgment | # 1068–1095 |
| R. 66 | Def.'s Reply in Support of Motion for Summary Judgment | # 1096–1102 |
| R. 67 | Opinion and Order on Cross Motions for Summary Judgment on Belo Contract | # 1103–1118 |
| R. 72 | Opinion and Order on Motion for Summary Judgment on Damages Issues | # 1257–1278 |

R. 133        Consent Judgment                    # 1427–1429

R. 134        Notice of Appeal                     # 1430–1431